1  CHAD A. READLER
   Acting Assistant Attorney General
2  BRIAN STRETCH
   United States Attorney
3  JACQUELINE COLEMAN SNEAD
   Assistant Branch Director
4  ERIC J. SOSKIN (PA Bar No. 20066)
   Senior Counsel
5  JENNIE L. KNEEDLER (DC Bar No. 500261)
   KEVIN SNELL (NY Bar)
6  Trial Attorneys
   United States Department of Justice
7  Civil Division, Federal Programs Branch
   P.O. Box 883
8  Washington, D.C. 20044
   Telephone: (202) 353-0533
9  Facsimile:  (202) 616-8470
   Email: Eric.Soskin@usdoj.gov
10 *Attorneys for the Attorney General*

UNDER SEAL

ORIGINAL
FILED

APR   7 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11
                IN THE UNITED STATES DISTRICT COURT
12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    CV 17      1959       DMR

14  In re NATIONAL SECURITY LETTERS          Civil Action No.

15

16                                           DECLARATION OF ERIC J.
                                             SOSKIN IN SUPPORT OF
17                                           NOTICE AND MEMORANDUM
                                             IN SUPPORT OF PETITION
18                                           FOR JUDICIAL REVIEW AND
                                             ENFORCEMENT OF TWO
19                                           NATIONAL SECURITY
                                             LETTERS
20
                                             LODGED UNDER SEAL
21                                           [ 18 U.S.C. § 3511(d)]

22

23  I, Eric J. Soskin, declare and state as follows:

24      1.      I am Senior Counsel in the Federal Programs Branch of the Civil Division of the

25  United States Department of Justice, in Washington, D.C.  I am the trial attorney representing the

26  petitioner, United States Attorney General Jefferson B. Sessions, III, in the above-entitled case.

27

1    In that capacity, I have personal knowledge of the following facts and, if called as a witness, I

2    could and would testify competently thereto.

3          2.        I submit this declaration in support of the Attorney General's Notice and

4    Memorandum in Support of his Petition for Judicial Review and Enforcement of Two National

5    Security Letters Pursuant to 18 U.S.C. § 3511.

6          3.        Attached hereto as Exhibit 1 is a true and correct copy of a letter sent by

7    ████████████████████████ 2017.

8          4.        Attached hereto as Exhibit 2 is a true and correct copy of a letter sent by ████

9    ████████████ 2017.

10         5.        Attached hereto as Exhibit 3 is a true and correct copy of the unclassified

11   Declaration of FBI Assistant Director E.W. Priestap.

12         6.        Attached hereto as Exhibit 4 is a true and correct copy of the opinion of the

13   United States District Court for the Northern District of California in *In re National Security

14   Letters,* (N.D. Cal. March 29, 2016).

15         7.        Attached hereto as Exhibit 5 is a true and correct copy of a national security letter

16   issued by the Federal Bureau of Investigation ("FBI") to ████████████ referred to as the

17   ████████ NSL."

18         8.        Attached hereto as Exhibit 6 is a true and correct copy of a national security letter

19   issued by the FBI to ████████ referred to as the ████████ NSL."

20         9.        Attached hereto as Exhibit 7 is a true and correct copy of the opinion of the

21   United States District Court for the Eastern District of Virginia in *In re National Security Letter,*

22   No. 1:12-mc-007(AJT/IDD) (E.D. Va. Apr. 24, 2012).

23         9.        Attached hereto as Exhibit 8 is a true and correct copy of the opinion of the

24   United States District Court for the Northern District of California in *In re NSLs,* No. 3:13-MC-

25   80063 (N.D. Cal. May 28, 2013).

26

27

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3

4        Executed on April 7, 2017, at Washington, D.C.

5

6                                    ERIC J. SOSKIN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*In re National Security Letters,*
Declaration of Eric J. Soskin in Support of Notice and Memorandum                          3

# Exhibit 1

March 10, 2017

Re: NSL File No. [              ]

I am writing in response to national security letter File No. [        ] which is dated [              ], 2016 and was served at [    ] headquarters on [              ] 2016. The letter seeks the name, address, length of service, and electronic communications transactional records associated with [            ]

We believe nondisclosure order accompanying the letter is legally invalid. As you know, litigation challenging the constitutionality of 18 U.S.C. §§ 2709 and 3511 is currently pending before the Ninth Circuit, where [              ] is headquartered. *See In re Under Seal v. Lynch*, 16-16067, 16-16081 & 16-16082. The petitioners in that case have argued—among other things—that the relevant statutes violate the First Amendment because they permit the FBI to unilaterally impose prior restraints on the speech of NSL recipients.

[          ] is dedicated to transparency with our users and the public about the law enforcement requests we receive.[1] Because of that commitment. we find the constitutional issues associated with indefinite nondisclosure orders troubling.

For these reasons, we ask that the FBI voluntarily withdraw the non-disclosure order and allow [            ] to publish, at a mini-

[1] See, e.g. [                                      ]

mum. a redacted version of the NSL. We have enclosed a pro-
posed redacted version of the letter for your consideration.

Should the FBI decline to withdraw the non-disclosure order, [redacted] hereby notifies the FBI pursuant to 18 U.S.C. § 3511(b)(1)
that we wish to initiate judicial review of it.

If you have questions or concerns, please do not hesitate to con-
tact me.

# Exhibit 2

March 10, 2017

Re: NSL File No. NSL-

I am writing in response to national security letter File No. NSL- which is dated 2016 and was served at headquarters on 2016. The letter seeks the

On , 2017, I was informed verbally by of the FBI's Office of General Counsel that the FBI has withdrawn the NSL, and a response from is no longer required, however the non-disclosure order issued with this NSL remains in place.

We believe the accompanying nondisclosure order may well be legally invalid. As you may know, litigation challenging the constitutionality of 18 U.S.C. §§ 2709 and 3511 is currently pending before the Ninth Circuit, where is headquartered. See In re Under Seal v. Lynch, 16-16067, 16-16081 & 16-16082. The petitioners in that case have argued—among other things—that those statutes violate the First Amendment because they permit the FBI to unilaterally impose prior restraints on the speech of NSL recipients.

[REDACTED] is dedicated to transparency with our users and the public about the law enforcement requests we receive.[1] Because of that commitment. we find the constitutional issues associated with indefinite nondisclosure orders troubling.

For these reasons. we ask that the FBI voluntarily withdraw the non-disclosure order and allow [REDACTED] to publish. at a minimum. a redacted version of the NSL. We have enclosed a proposed redaction of the letter, for your consideration.

Should the FBI decline to withdraw the non-disclosure order. [REDACTED] hereby notifies the FBI pursuant to 18 U.S.C. § 3511(b)(1) that we wish to initiate judicial review of it.

If you have questions or concerns, please do not hesitate to contact me.

1 See, e.g., [REDACTED]

# Exhibit 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

)
)
IN RE NATIONAL SECURITY LETTERS )          **TO BE FILED UNDER SEAL**
)
)          Declaration of E.W. Priestap,
)          Federal Bureau of Investigation
)
_____ )

### Introduction

I, E.W. Priestap, hereby declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am the Assistant Director of the Counterintelligence Division of the Federal Bureau of

Investigation ("FBI"), United States Department of Justice.    This declaration is submitted in

support of the Attorney General's Petition for Review and Enforcement of two National Security

Letters ("NSLs") pursuant to the provisions of 18 U.S.C. § 3511 in the United States District

Court for the Northern District of California.

2.      I base the statements contained in this sealed, but unclassified, declaration upon my

personal knowledge, my review and consideration of documents and information available to me

in my official capacity, and information furnished to me by Special Agents and other employees

of the FBI.    My conclusions have been reached in accordance therewith.

3.      I have reviewed the NSLs for which the Government is seeking enforcement in this

matter.    The NSLs contain requests for the name, address and length of service for all services,

as well as all accounts, provided to the individuals or identifiers listed, pursuant to 18 U.S.C. §

1

2709 to a wire or electronic communication service provider.[1] The NSLs were issued in support of authorized investigations to protect against international terrorism or clandestine intelligence activities and contains the required certifications by the Director of the FBI or his designee of such fact pursuant to 18 U.S.C. § 2709(b).

4.      The NSLs each contain a certification pursuant to 18 U.S.C. § 2709(c) that the absence of a prohibition of disclosure may result in (1) a danger to the national security of the United States; (2) interference with a criminal, counterterrorism, or counterintelligence investigation; (3) interference with diplomatic relations; or (4) danger to the life or physical safety of any person. The NSLs also notified the recipient of the availability of judicial review pursuant to 18 U.S.C. § 2709(d).

5.      I have reviewed the need for continued nondisclosure of the NSLs at issue in this case. Additional information concerning the NSLs in question and my review of them is contained in a classified declaration that is being submitted *ex parte* and *in camera*.   For the reasons discussed in my classified declaration, I have concluded and hereby certify that there is good reason to believe that an absence of a prohibition of disclosure of the NSLs may result in one or more of the enumerated harms set forth in 18 U.S.C. § 3511(b)(2): a danger to the national security of the United States; interference with a criminal, counterterrorism, or counterintelligence investigation; interference with diplomatic relations; or danger to the life or physical safety of any person.

---

[1] In addition to this information for all services and individuals, one NSL seeks electronic communication transactional records.

2

6.      As of April 6, 2017, as further explained in my classified declaration, the recipient of the

NSLs has not complied with the FBI's request for information contained in one of the NSLs.

The failure of the recipient to comply with the NSL by providing the information requested

causes ongoing interference with the authorized investigation pursuant to which the NSL was

issued.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   April 6, 2017

_E. W. Pri_____

E.W. Priestap
Assistant Director
Counterintelligence Division
National Security Branch
Federal Bureau of Investigation
Washington, D.C.

3

# Exhibit 4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: NATIONAL SECURITY LETTERS,

Case No. 11-cv-02173-SI ; Case No. 3:11-cv-2667 SI; Case No. 3:13-mc-80089 SI; Case No. 3:13-cv-1165 SI
*SEALED*

**ORDER RE: RENEWED PETITIONS TO SET ASIDE NATIONAL SECURITY LETTERS AND MOTIONS FOR PRELIMINARY INJUNCTION AND CROSS-PETITIONS FOR ENFORCEMENT OF NATIONAL SECURITY LETTERS**

These related cases involve two electronic communication service providers who received National Security Letters ("NSLs"), a type of administrative subpoena, issued by the Federal Bureau of Investigation. The NSLs sought subscriber information, and were issued by an FBI Special Agent in Charge who certified that the information sought was relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities. *See* 18 U.S.C. § 2709(b) (2014). The NSLs also informed the providers that they were prohibited from disclosing the contents of the subpoenas or the fact that they had received the subpoenas, based upon a certification from the FBI that such disclosure may result in "a danger to the national security of the United States; interference with a criminal, counterterrorism, or counterintelligence investigation; interference with diplomatic relations; or danger to the life or physical safety of any person." 18 U.S.C. § 2709(c)(1) (2014).

In 2011 and 2013, the electronic communication service providers filed these lawsuits seeking to set aside the NSLs as unconstitutional. In 2013, this Court reviewed the 2013 versions

1   of the NSL statutes and held that the nondisclosure requirements and related provisions regarding
2   judicial review of those requirements suffered from significant constitutional infirmities that could
3   not be cured absent legislative action. While these cases were on appeal to the Ninth Circuit Court
4   of Appeals, Congress amended the NSL statutes through the passage of the USA Freedom Act of
5   2015 ("USAFA"), Pub. L. No. 114-23, 129 Stat. 268 (2015). The Ninth Circuit remanded these
6   cases to this Court to reexamine the providers' challenges to the NSL statutes in light of the
7   amendments.

8   Now before the Court are petitioners' motions for a preliminary injunction and renewed
9   petitions to set aside the NSLs, and the government's cross-petitions to enforce the NSLs. The
10  Court held a hearing on these matters on December 18, 2015. After careful consideration of the
11  parties' papers and arguments, the Court concludes that the 2015 amendments to the NSL statutes
12  cure the deficiencies previously identified by this Court, and that as amended, the NSL statutes
13  satisfy constitutional requirements. This Court has also considered the appropriateness of
14  continued nondisclosure of the four specific NSL applications which gave rise to these cases. As
15  to three of the certifications (two in case 3:13-cv-1165 SI and one in case 3:11-cv-2173 SI), the
16  Court finds that the declarant has shown that that there is a reasonable likelihood that disclosure of
17  the information subject to the nondisclosure requirement would result in a danger to the national
18  security of the United States, interference with a criminal, counterterrorism or counterintelligence
19  investigation, interference with diplomatic relations or danger to a person's life or physical safety.
20  As to the fourth (in case 3:13-mc-80089 SI), the Court finds that the declarant has not made such a
21  showing.

**BACKGROUND**

I.   **2013 Decisions of this Court and Prior Cases Testing Constitutionality of the NSL Provisions**

27  On [ ] 2011, pursuant to the National Security Letter Statute, 18 U.S.C. § 2709, the
28  FBI issued an NSL to petitioner A, an electronic communication service provider ("ECSP"),

2

United States District Court
Northern District of California

1   seeking "all subscriber information, limited to name, address, and length of service, for all services
2   provided to or accounts held by the named subscriber and/or subscriber of the named account."
3   Dkt. No. 7, Ex. A in 3:11-cv-2173 SI.  By certifying, under section 2709(c)(1), that disclosure of
4   the existence of the NSL may result in "(i) a danger to the national security of the United States;
5   (ii) interference with a criminal, counterterrorism, or counterintelligence investigation; (iii)
6   interference with diplomatic relations; or (iv) danger to the life or physical safety of any person,"
7   the FBI was able to prohibit petitioner from disclosing the existence of the NSL.  18 U.S.C.
8   § 3511(b)(2-(3) (2014).  On May 2, 2011, petitioner filed a Petition to Set Aside the National
9   Security Letter and Nondisclosure Requirement, pursuant to 18 U.S.C. § 3511(a) and (b).  *In re*
10  *National Security Letter*, 3:11-cv-2173 SI.  The government opposed the petition, filed a separate
11  lawsuit seeking a declaration that petitioner was required to comply with the NSL, *United States*
12  *Department of Justice v. Under Seal*, 3:11-cv-2667 SI, and filed a motion to compel compliance
13  with the NSL.

14      Petitioner challenged the constitutionality – both facially and as applied – of the
15  nondisclosure provision of 18 U.S.C. § 2709(c) and the judicial review provisions of 18 U.S.C.
16  § 3511(b) (collectively "NSL nondisclosure provisions").[1]   Petitioner argued that the

17

---

18  [1]  The version of the NSL statutes in effect at the time these lawsuits were filed in 2011
19  provided as follows.  18 U.S.C. §§ 2709(a) and (b) stated that a wire or electronic communication
    service provider was required to comply with a request for specified categories of subscriber
20  information if the Director of the FBI or his designee certified that the records sought were
    relevant to an authorized investigation to protect against international terrorism or clandestine
21  intelligence activities, provided that such an investigation of a United States person was not
    conducted solely on the basis of activities protected by the First Amendment to the Constitution of
22  the United States.   18 U.S.C. §§ 2709(a)-(b) (2011).  Section 2709(c)(1) provided that if the
    Director of the FBI or his designee certified that "there may result a danger to the national security
23  of the United States, interference with a criminal, counterterrorism, or counterintelligence
    investigation, interference with diplomatic relations, or danger to the life or physical safety of any
24  person," the recipient of the NSL was prohibited from disclosing to anyone (other than to an
    attorney to obtain legal advice or legal assistance with respect to the request) that the FBI sought
25  or obtained access to information or records sought in the NSL.  18 U.S.C. § 2709(c)(1) (2011).
    Section (c)(2) required the FBI to inform the recipient of the NSL of the nondisclosure
    requirement.  18 U.S.C. § 2709(c)(2) (2011).
26      Section 3511 governed judicial review of NSLs and nondisclosure orders issued under
    section 2709 and other NSL statutes.  Under 3511(a), the recipient of an NSL could petition a
27  district court for an order modifying or setting aside the NSL.  The court could modify the NSL, or
    set it aside, only "if compliance would be unreasonable, oppressive, or otherwise unlawful."  18
28  U.S.C. § 3511(a) (2011).  Under 3511(b)(2), an NSL recipient subject to a nondisclosure order
    could petition a district court to modify or set aside the nondisclosure order.  If the NSL was

3

1    nondisclosure provision of the statute was an unconstitutional prior restraint and content-based

2    restriction on speech. More specifically, petitioner contended that the NSL provisions lacked the

3    necessary procedural safeguards required under the First Amendment because the government did

4    not bear the burden to seek judicial review of the nondisclosure order, and the government did not

5    bear the burden of demonstrating that the nondisclosure order was necessary to protect specific,

6    identified interests. Petitioner also argued that the NSL nondisclosure provisions violated the First

7    Amendment because they acted as a licensing scheme providing unfettered discretion to the FBI,

8    and that the judicial review provisions violated separation of powers principles because the statute

9    dictated an impermissibly restrictive standard of review for courts adjudicating challenges to

10   nondisclosure orders. Petitioner also attacked the substantive provisions of the NSL statute itself,

11   both separately and in conjunction with the nondisclosure provisions, arguing that the statute was

12   a content-based restriction on speech that failed strict scrutiny.

13       In its opposition to the petition, the government argued that the NSL statute satisfied strict

14   scrutiny and did not impinge on the anonymous speech or associational rights of the subscriber

15   whose information was sought in the NSL. The government also asserted that the nondisclosure

16   provisions were appropriately applied to petitioner because the nondisclosure order was not a

17

18

19   issued within a year of the time a challenge to the nondisclosure order was made, a court could
     "modify or set aside such a nondisclosure requirement if it finds that there is no reason to believe
20   that disclosure may endanger the national security of the United States, interfere with a criminal,
     counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or
21   endanger the life or physical safety of any person." 18 U.S.C. § 3511(b) (2011). However, if a
     specified high ranking government official (i.e., the Attorney General, Deputy or Assistant
22   Attorney Generals, the Director of the Federal Bureau of Investigation, or agency heads) certified
     that disclosure "may endanger the national security of the United States or interfere with
23   diplomatic relations, such certification shall be treated as conclusive unless the court finds that the
     certification was made in bad faith." 18 U.S.C. § 3511 (b)(2) (2011).
24       Under 3511(b)(3), if the petition to modify or set aside the nondisclosure order was filed
     more than one year after the NSL issued, a specified government official, within ninety days of the
25   filing of the petition, was required to either terminate the nondisclosure requirement or re-certify
     that disclosure may result in an enumerated harm. 18 U.S.C. § 3511(b)(3) (2011). If the
26   government provided that re-certification, the Court could again only alter or modify the NSL if
     there was "no reason to believe that disclosure may" result in an enumerated harm, but the court
27   was required to treat the certification as "conclusive unless the court f[ound] that the
     recertification was made in bad faith." 18 U.S.C. § 3511(b)(3) (2011). Finally, if the court denied
28   a petition for an order modifying or setting aside a nondisclosure order, "the recipient shall be
     precluded for a period of one year from filing another petition to modify or set aside such
     nondisclosure requirement." 18 U.S.C. § 3511(b)(3) (2011).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "classic prior restraint" warranting the most rigorous scrutiny and because it was issued after an

2    adequate certification from the FBI. Finally, the government argued that the statutory standard of

3    judicial review of NSLs and nondisclosure orders was constitutional.

4      In a decision filed on March 14, 2013, this Court found that the NSL nondisclosure and

5    judicial review provisions suffered from significant constitutional infirmities. *In re National*

6    *Security Letter*, 930 F. Supp. 2d 1064 (N.D. Cal. 2013). The Court first reviewed prior cases

7    testing the constitutionality of the NSL provisions at issue. In *John Doe, Inc. v. Gonzales*, 500 F.

8    Supp. 2d 379 (S.D.N.Y. 2007), affirmed in part and reversed in part and remanded by *John Doe,*

9    *Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008), the district court found that the nondisclosure

10   provision was a prior restraint and a content-based restriction on speech that violated the First

11   Amendment because the government did not bear the burden to seek prompt judicial review of the

12   nondisclosure order. *John Doe, Inc.*, 500 F. Supp. 2d at 406 (relying on *Freedman v. Maryland*,

13   380 U.S. 51 (1965)).[2]  The district court approved allowing the FBI to determine whether

14   disclosure would jeopardize national security, finding that the FBI's discretion in certifying a need

15   for nondisclosure of an NSL "is broad but not inappropriately so under the circumstances" of

16   protecting national security. *Id*. at 408-09. However, the district court determined that section

17   3511(b)'s restriction on when a court may alter or set aside an NSL – only if there was "no reason

18   to believe" that disclosure would result in one of the enumerated harms – in combination with the

19   statute's direction that a court must accept the FBI's certification of harm as "conclusive unless the

20   court finds that the certification was made in bad faith," were impermissible attempts to restrict

21   judicial review in violation of separation of powers principles. *Id*. at 411-13. The district court

22

23     [2]   In *Freedman*, the Supreme Court evaluated a motion picture censorship statute that
24   required an owner or lessee of a film to submit the film to the Maryland State Board of Censors
     and obtain its approval prior to showing the film. 380 U.S. at 52.  The Court held that such a
25   review process "avoids constitutional infirmity only if it takes place under procedural safeguards
     designed to obviate the dangers of a censorship system." *Id*. at 58. "*Freedman* identified three
26   procedural requirements: (1) any restraint imposed prior to judicial review must be limited to 'a
     specified brief period'; (2) any further restraint prior to a final judicial determination must be
27   limited to 'the shortest fixed period compatible with sound judicial resolution'; and (3) the burden
     of going to court to suppress speech and the burden of proof in court must be placed on the
28   government." *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008) (quoting *Freedman*,
     380 U.S. at 58–59) (numbering and ordering follows Supreme Court's discussion of *Freedman* in
     *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990)).

United States District Court
Northern District of California

1  found that the unconstitutional nondisclosure provisions were not severable from the substantive

2  provisions of the NSL statute, and declined to address whether the unconstitutional judicial review

3  provision – which implicated review of other NSLs, not just NSLs to electronic communication

4  service providers at issue – was severable.

5        The district court's decision was affirmed in part, reversed in part, and remanded by the

6  Second Circuit Court of Appeals in *John Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008).  In

7  that case, the Second Circuit found that while not a "classic prior restraint" or a "broad" content-

8  based prohibition on speech necessitating the "most rigorous First Amendment scrutiny," the

9  nondisclosure requirement was sufficiently analogous to them to justify the application of the

10  procedural safeguards announced in *Freedman v. Maryland*, 380 U.S. 51, particularly the third

11  *Freedman* prong requiring the government to initiate judicial review.  *Id.* at 881.  However, in

12  order to avoid the constitutional deficiencies, the Second Circuit read into the statute a "reciprocal

13  notice" requirement that the government inform each NSL recipient that the recipient could object

14  to the nondisclosure requirements, and if contested, the government would initiate judicial review

15  within 30 days, and that such review would conclude within 60 days.  The Second Circuit held

16  that by "conforming" section 2709(c) in this manner, the *Freedman* concerns were met.

17        The Second Circuit also found problematic the statutory restrictions on the district court's

18  review of the adequacy of the FBI's justification for nondisclosure orders.  In order to avoid some

19  of the problems, the Second Circuit accepted three concessions by the government that narrowed

20  the operation of sections 2709(c) and 3511(b) in significant respects.  First, the Second Circuit

21  accepted the government's position -- offered in litigation – that the section 2709(c) nondisclosure

22  requirement applied only if the FBI certified that an enumerated harm related to an authorized

23  investigation to protect against international terrorism or clandestine intelligence activity may

24  occur.  *Id.* at 875.  Second, the Second Circuit accepted the government's litigation position that

25  section 3511(b)(2)'s requirement that a court may alter or modify the nondisclosure agreement

26  only if there "is no reason to believe that disclosure may" risk one of the enumerated harms,

27  should be read to mean that a court may alter or modify the nondisclosure agreement unless there

28  is "some reasonable likelihood" that the enumerated harm will occur.  Third, the Second Circuit

6

United States District Court
Northern District of California

1    accepted the government's agreement that it would bear the burden of proof to persuade a district

2    court – through evidence submitted in camera as necessary – that there was a good reason to

3    believe that disclosure may risk one of the enumerated harms, and that the district court must find

4    that such a good reason exists. *Id.* at 875-76.

5        In interpreting section 3511(b) to require the government to show a "good" reason that an

6    enumerated harm related to international terrorism or clandestine intelligence activity may result,

7    and requiring the government to submit proof to the district court to support its certification, the

8    Second Circuit found that a court would have – consistent with its duty independently to assess

9    First Amendment restraints in light of national security concerns – "a basis to assure itself (based

10   on in camera presentations where appropriate) that the link between the disclosure and risk of

11   harm is substantial." *Id.* at 881. After implying these limitations – based on the government's

12   litigation concessions – the Second Circuit found that most of the significant constitutional

13   deficiencies found by the district court could be avoided. However, the Second Circuit affirmed

14   the lower court's holding that section 3511(b)(2) and (b)(3)'s provision that government

15   certifications must be treated as "conclusive" is not "meaningful judicial review" as required by

16   the First Amendment. *Id.* at 882. In conclusion, the Second Circuit severed the conclusive

17   presumption provision of section 3511(b), but left intact the remainder of section 3511(b) and the

18   entirety of section 2709, with the added imposed limitations and "with government-initiated

19   review as required." *Id.* at 885.

20       In this Court's March 13, 2013 decision, the Court largely agreed with the analysis of the

21   Second Circuit in *John Doe, Inc. v. Mukasey,* and held that although section 2709(c) did not need

22   to satisfy the "extraordinarily rigorous" *Pentagon Papers* test,[3] section 2709(c) must still meet the

23

24   ———

[3]    In *New York Times v. United States (Pentagon Papers),* 403 U.S. 713 (1971) (per
25   curiam), the Supreme Court denied the United States' request for an injunction enjoining the *New
     York Times* and the *Washington Post* from publishing a classified government study. Citing
26   Justice Stewart's concurrence, petitioners have contended throughout this litigation that the
     nondisclosure provisions are constitutional only if the government can show that disclosure of the
27   information will "surely result in direct, immediate, and irreparable harm to our Nation or its
     people." *Id.* at 730 (Stewart, J., joined by White, J., concurring). As explained in the Court's 2013
28   decision and this decision, the Court concludes that the *Pentagon Papers* test does not apply to the
     NSL nondisclosure requirements.

7

United States District Court
Northern District of California

1   heightened justifications for sustaining prior-restraints announced in *Freedman v. Maryland*, and

2   must be narrowly tailored to serve a compelling government interest.

3       This Court found that section 2709 did not satisfy the *Freedman* procedural safeguards

4   because the NSL provisions did not require the government to initiate judicial review of NSL

5   disclosure orders. This Court also found that the NSL nondisclosure provisions were not narrowly

6   tailored on their face, since they applied without distinction to prohibiting disclosures regarding

7   the content of the NSLs as well as to the very fact of having received an NSL. This Court also

8   held that section 3511(b) violated the First Amendment and separation of powers principles

9   because the statute impermissibly attempted to circumscribe a court's ability to review the

10  necessity of nondisclosure orders. This Court found that it was not within its power to "conform"

11  the NSL nondisclosure provisions as the Second Circuit had. This Court therefore held the NSL

12  statutes unconstitutional, denied the government's request to enforce the NSL at issue in 3:11-cv-

13  2173 SI, and enjoined the government from issuing NSLs. This Court stayed enforcement of its

14  decision pending appeal to the Ninth Circuit.

15      In 2013, petitioner A received two additional NSLs and on April 23, 2013, petitioner A

16  filed another petition to set aside those NSLs on same constitutional grounds raised in the 2011

17  petition. *In re NSLs*, 3:13-mc-80089 SI. In addition, two other recipients of NSLs filed lawsuits

18  in this Court seeking to set aside the NSLs on the basis of the First Amendment and separation of

19  powers. *See In re NSLs*, 3:13-cv-1165 SI (petition challenging 2 NSLs) and *In re NSLs*, 3:13-mc-

20  80063 SI (petition challenging 19 NSLs).[4]

21      In three separate orders filed on May 21, 2013, August 12, 2013, and August 13, 2013, this

22  Court found that in light of the pending appeal and stay of the judgment in *In re NSLs*, 3:11-cv-

23  2173 SI, it was appropriate to review the arguments and evidence on an NSL-by-NSL basis. In

24  determining whether to enforce the challenged NSLs, the Court reviewed classified and

25  unclassified evidence submitted by the government. The Court found that the government

26  demonstrated that the NSLs were issued in full compliance with the procedural and substantive

27

28      [4] The Court will refer to the petitioner in *In re NSLs*, 3:13-cv-1165 SI as petitioner B and
the petitioner in *In re NSLs*, 3:13-mc-80063 SI as petitioner C.

8

1    requirements imposed by the Second Circuit in *John Doe, Inc. v. Mukasey*. Specifically, the Court
2    found that the government had: (1) notified the NSL recipients that the government would initiate
3    judicial review of the nondisclosure order and the underlying NSL if the recipient objected to
4    compliance; (2) certified that the nondisclosure orders were necessary to prevent interference with
5    an authorized investigation to protect against international terrorism or clandestine intelligence
6    agencies; and (3) submitted evidence to showing there was a "good reason" to believe that absent
7    nondisclosure, some reasonable likelihood of harm to an authorized investigation to protect
8    against international terrorism or clandestine intelligence agencies would result. The Court also
9    found that the Court was not expected to treat the FBI's certification as to the necessity of the
10   nondisclosure as conclusive, but to conduct a searching review of the evidence submitted. *See*
11   Dkt. No. 27 in 3:13-mc-80063 SI (May 21, 2013 Order); Dkt. No. 13 in 3:13-cv-1165 SI (August
12   12, 2013 Order); Dkt. No. 20 in 3:13-mc-80089 SI (August 13, 2013 Order). The Court denied
13   the petitioners' petitions to set aside the NSLs challenged in 3:13-mc-80089 SI, 3:13-mc-80063 SI,
14   and 3:13-cv-1165 SI, and granted the government's motions to enforce those NSLs. The
15   petitioners in those cases unsuccessfully sought stays of the enforcement orders, and thereafter
16   complied with the information requests and the nondisclosure requirements of all of the NSLs.[5]
17   The petitioner in 3:13-mc-80063 SI did not file an appeal. The parties in 3:11-cv-2173 SI, 3:13-
18   mc-80089 SI and 3:13-cv-1165 SI filed appeals, and those appeals were consolidated before the
19   Ninth Circuit.

20       The consolidated appeals were submitted for decision following oral argument on October
21   8, 2014. On June 2, 2015, while the consolidated appeals were pending before the Ninth Circuit,
22   Congress amended 18 U.S.C. §§ 2709 and 3511 through the passage of the USA Freedom Act of
23   2015 ("USAFA"), Pub. L. No. 114-23, 129 Stat. 268 (2015). In June 2015, the Ninth Circuit
24   ordered the parties to file supplemental briefing regarding the impact of the amendments on the
25   appeals. On August 24, 2015, the Ninth Circuit issued an order stating "[i]n light of the significant

26

27

28   _____

[5] In a few instances, the government withdrew the information requests for particular
NSLs, but the government did not withdraw any of the nondisclosure requirements for any of the
NSLs.

9

1   changes to the statutes, we conclude that a remand to the district court is appropriate since the

2   district court may address the recipients' challenges to the revised statutes." The Ninth Circuit

3   vacated the judgments in the consolidated appeals and remanded to this Court for further

4   proceedings.

5

6   **II.**     **2015 Amendments to NSL Statutes**

7         The legislative history of the USAFA states that section 502, titled "Limitations on

8   Disclosure of National Security Letters," "corrects the constitutional defects in the issuance of

9   NSL nondisclosure orders found by the Second Circuit Court of Appeals in *Doe v. Mukasey*, 549

10   F.3d 861 (2d Cir. 2008), and adopts the concepts suggested by that court for a constitutionally

11   sound process." H.R. Rep. No. 114-109, at 24 (2015).

12

13       **A.**     **Section 2709**

14         The USAFA amended sections 2709(b) and (c), and added new subsection (d). As

15   amended, section 2709(b)(1) provides that an NSL is authorized only when a specified FBI

16   official provides a certification that "us[es] a term that specifically identifies a person, entity,

17   telephone number, or account as the basis for [the NSL]," 18 U.S.C. § 2709(b) (2016).[6] Section

18   2709(c) now requires the government to provide the NSL recipient with notice of the right to

19   judicial review as a condition of prohibiting disclosure of the receipt of the NSL. *See* 18 U.S.C.

20   § 2709(c)(1)(A) (2016). Similarly, new subsection (d) requires that an NSL notify the recipient

21   that judicial review is available pursuant to 18 U.S.C. § 3511. *See* 18 U.S.C. § 2709(d) (2016).

22   Second, the amended statute now permits the government to modify or rescind a nondisclosure

23   requirement after an NSL is issued. *See* 18 U.S.C. § 2709(c)(2)(A)(iii) (2016). Finally, under the

24

25

26         [6] The legislative history regarding this amendment states, "This section prohibits the use
of various national security letter (NSL) authorities (contained in the Electronic Communications

27   Privacy Act, Right to Financial Privacy Act, and Fair Credit Reporting Act) without the use of a
specific selection term as the basis for the NSL request. It specifies that for each NSL authority,

28   the government must specifically identify the target or account." H.R. Rep. No. 114-109, at 24
(discussing § 501 of USAFA).

United States District Court
Northern District of California

1    amended section 2709(c), the recipient of an NSL containing a nondisclosure requirement "may

2    disclose information . . . to . . . other persons as permitted by the Director of the [FBI] or the

3    designee of the Director." 18 U.S.C. §§ 2709(c)(2)(A)(iii); 2709(c)(2)(D) (2016).

4         As amended by the USAFA, section 2709, titled "Counterintelligence access to telephone

5    toll and transactional records," now states in full:

6         (a) Duty to provide.--A wire or electronic communication service provider shall

7         comply with a request for subscriber information and toll billing records
          information, or electronic communication transactional records in its custody or

8         possession made by the Director of the Federal Bureau of Investigation under
          subsection (b) of this section.

9         (b) Required certification.--The Director of the Federal Bureau of Investigation, or

10        his designee in a position not lower than Deputy Assistant Director at Bureau
          headquarters or a Special Agent in Charge in a Bureau field office designated by

11        the Director, may, using a term that specifically identifies a person, entity,
          telephone number, or account as the basis for a request--

12            (1) request the name, address, length of service, and local and long distance

13        toll billing records of a person or entity if the Director (or his designee) certifies in
          writing to the wire or electronic communication service provider to which the

14        request is made that the name, address, length of service, and toll billing records
          sought are relevant to an authorized investigation to protect against international

15        terrorism or clandestine intelligence activities, provided that such an investigation
          of a United States person is not conducted solely on the basis of activities protected

16        by the first amendment to the Constitution of the United States; and

17            (2) request the name, address, and length of service of a person or entity if
          the Director (or his designee) certifies in writing to the wire or electronic

18        communication service provider to which the request is made that the information
          sought is relevant to an authorized investigation to protect against international

19        terrorism or clandestine intelligence activities, provided that such an investigation
          of a United States person is not conducted solely upon the basis of activities

20        protected by the first amendment to the Constitution of the United States.

21        (c) Prohibition of certain disclosure.--

22            (1) Prohibition.--

23                (A)  In  general.--If  a  certification  is  issued  under
              subparagraph (B) and notice of the right to judicial review under

24            subsection (d) is provided, no wire or electronic communication
              service provider that receives a request under subsection (b), or

25            officer, employee, or agent thereof, shall disclose to any person that
              the Federal Bureau of Investigation has sought or obtained access to

26            information or records under this section.

27                (B) Certification.--The requirements of subparagraph (A)
              shall apply if the Director of the Federal Bureau of Investigation, or

28            a designee of the Director whose rank shall be no lower than Deputy
              Assistant Director at Bureau headquarters or a Special Agent in

11

Charge of a Bureau field office, certifies that the absence of a prohibition of disclosure under this subsection may result in--

    (i) a danger to the national security of the United States;

    (ii) interference with a criminal, counterterrorism, or counterintelligence investigation;

    (iii) interference with diplomatic relations; or

    (iv) danger to the life or physical safety of any person.

(2) Exception.--

    (A) In general.--A wire or electronic communication service provider that receives a request under subsection (b), or officer, employee, or agent thereof, may disclose information otherwise subject to any applicable nondisclosure requirement to--

    (i) those persons to whom disclosure is necessary in order to comply with the request;

    (ii) an attorney in order to obtain legal advice or assistance regarding the request; or

    (iii) other persons as permitted by the Director of the Federal Bureau of Investigation or the designee of the Director.

    (B) Application.--A person to whom disclosure is made under subparagraph (A) shall be subject to the nondisclosure requirements applicable to a person to whom a request is issued under subsection (b) in the same manner as the person to whom the request is issued.

    (C) Notice.--Any recipient that discloses to a person described in subparagraph (A) information otherwise subject to a nondisclosure requirement shall notify the person of the applicable nondisclosure requirement.

    (D) Identification of disclosure recipients.--At the request of the Director of the Federal Bureau of Investigation or the designee of the Director, any person making or intending to make a disclosure under clause (i) or (iii) of subparagraph (A) shall identify to the Director or such designee the person to whom such disclosure will be made or to whom such disclosure was made prior to the request.

(d) Judicial review.--

    (1) In general.--A request under subsection (b) or a nondisclosure requirement imposed in connection with such request under subsection (c) shall be subject to judicial review under section 3511.

(2) Notice.--A request under subsection (b) shall include notice of the availability of judicial review described in paragraph (1).

18 U.S.C. § 2709 (2016).

## B.    Section 3511

Section 502(g) of the USAFA amends section 3511(d) to codify a version of the reciprocal notice procedure for NSL disclosure requirements that the Second Circuit held in *John Doe, Inc. v. Mukasey* would be constitutional. As amended, section 3511(b) provides that "[i]f a recipient of [an NSL] wishes to have a court review a nondisclosure requirement imposed in connection with the request or order, the recipient may notify the Government or file a petition for judicial review in any court . . . ." 18 U.S.C. § 3511(b)(1)(A) (2016). If the recipient notifies the government that it objects to or wishes to have a court review the nondisclosure requirement, the government must apply for a nondisclosure order within 30 days. *Id.* § 3511(b)(1)(B) (2016). The amended statute requires the district court to "rule expeditiously," and if the court determines that the requirements for nondisclosure are met, it shall "issue a nondisclosure order that includes conditions appropriate to the circumstances." *Id.* § 3511(b)(1)(C) (2016).[7] The amended statute also provides that a recipient of an NSL "may, in the United States district court for the district in which that person or entity does business or resides, petition for an order modifying or setting aside the request[,]" and that "[t]he court may modify or set aside the request if compliance would be unreasonable, oppressive, or otherwise unlawful." *Id.* at § 3511(a) (2016).

In addition, amended section 3511(b) requires that in the event of judicial review, the government's application for a nondisclosure order must be accompanied by a certification from a specified government official "containing a statement of specific facts indicating that the absence of a prohibition of disclosure under this subsection may result in-- (A) a danger to the national

---

[7]    As discussed *infra*, the statutory requirement of "expeditious" judicial review differs from the reciprocal notice procedure discussed in *John Doe, Inc. v. Mukasey*, in that in *Doe*, the Second Circuit stated its view that if the government used a reciprocal notice procedure as a means of initiating judicial review and judicial review was sought, a court would have 60 days to adjudicate the merits, unless special circumstances warranted additional time. *See John Doe, Inc.*, 549 F.3d at 883. Petitioners contend that the amended statute is deficient because it does not mandate a specific time period for the conclusion of judicial review.

13

security of the United States; (B) interference with a criminal, counterterrorism, or counterintelligence investigation; (C) interference with diplomatic relations; or (D) danger to the life or physical safety of any person." 18 U.S.C. § 3511(b)(2) (2016). The statute provides that the district court "shall issue a nondisclosure order or extension thereof under this subsection if the court determines that there is reason to believe that disclosure of the information subject to the nondisclosure requirement during the applicable time period may result in" one of the enumerated harms. *Id.* § 3511(b)(3) (2016). The USAFA repealed the provision formerly contained in section 3511(b)(2)-(3) that gave conclusive effect to good faith certifications by specified government officials. *See* H.R. Rep. No. 114-109, at 24 ("This section repeals a provision stating that a conclusive presumption in favor of the government shall apply where a high-level official certifies that disclosure of the NSL would endanger national security or interfere with diplomatic relations."). The USAFA also repealed the provision formerly set forth in section 3511(b)(3) under which an NSL recipient who unsuccessfully challenged a nondisclosure requirement a year or more after the issuance of the NSL was required to wait one year before seeking further judicial relief.

As amended by the USAFA, 18 U.S.C. § 3511, titled "Judicial review of requests for information," now provides,

> (a) The recipient of a request for records, a report, or other information under section 2709(b) of this title, section 626(a) or (b) or 627(a) of the Fair Credit Reporting Act, section 1114(a)(5)(A) of the Right to Financial Privacy Act, or section 802(a) of the National Security Act of 1947 may, in the United States district court for the district in which that person or entity does business or resides, petition for an order modifying or setting aside the request. The court may modify or set aside the request if compliance would be unreasonable, oppressive, or otherwise unlawful.

> (b) Nondisclosure.--

> > (1) In general.--

> > > (A) Notice.--If a recipient of a request or order for a report, records, or other information under section 2709 of this title, section 626 or 627 of the Fair Credit Reporting Act (15 U.S.C. 1681u and 1681v), section 1114 of the Right to Financial Privacy Act of 1978 (12 U.S.C. 3414), or section 802 of the National Security Act of 1947 (50 U.S.C. 3162), wishes to have a court review a nondisclosure requirement imposed in connection with the request

14

or order, the recipient may notify the Government or file a petition for judicial review in any court described in subsection (a).

(B) Application.--Not later than 30 days after the date of receipt of a notification under subparagraph (A), the Government shall apply for an order prohibiting the disclosure of the existence or contents of the relevant request or order. An application under this subparagraph may be filed in the district court of the United States for the judicial district in which the recipient of the order is doing business or in the district court of the United States for any judicial district within which the authorized investigation that is the basis for the request is being conducted. The applicable nondisclosure requirement shall remain in effect during the pendency of proceedings relating to the requirement.

(C) Consideration.--A district court of the United States that receives a petition under subparagraph (A) or an application under subparagraph (B) should rule expeditiously, and shall, subject to paragraph (3), issue a nondisclosure order that includes conditions appropriate to the circumstances.

(2) Application contents.--An application for a nondisclosure order or extension thereof or a response to a petition filed under paragraph (1) shall include a certification from the Attorney General, Deputy Attorney General, an Assistant Attorney General, or the Director of the Federal Bureau of Investigation, or a designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, or in the case of a request by a department, agency, or instrumentality of the Federal Government other than the Department of Justice, the head or deputy head of the department, agency, or instrumentality, containing a statement of specific facts indicating that the absence of a prohibition of disclosure under this subsection may result in--

(A) a danger to the national security of the United States;

(B) interference with a criminal, counterterrorism, or counterintelligence investigation;

(C) interference with diplomatic relations; or

(D) danger to the life or physical safety of any person.

(3) Standard.--A district court of the United States shall issue a nondisclosure order or extension thereof under this subsection if the court determines that there is reason to believe that disclosure of the information subject to the nondisclosure requirement during the applicable time period may result in--

(A) a danger to the national security of the United States;

(B) interference with a criminal, counterterrorism, or counterintelligence investigation;

(C) interference with diplomatic relations; or

(D) danger to the life or physical safety of any person.

15

18 U.S.C. 3511(a)-(b) (2016).

## C.    Other Provisions of USAFA

The USAFA includes two other provisions that are relevant to this litigation. First, section 502(f) requires the Attorney General to adopt procedures to require "the review at appropriate intervals" of nondisclosure requirements issued pursuant to amended section 2709 "to assess whether the facts supporting nondisclosure continue to exist." USAFA § 502(f)(1)(A), Pub. L. No. 114-23, 129 Stat 268, at 288 (2015). On November 24, 2015, the Attorney General adopted "Termination Procedures for National Security Letter Nondisclosure Requirement."[8]   Those procedures provide:

### III. Review Procedures

### A. Timeframe for Review

Under these NSL Procedures, the nondisclosure requirement of an NSL shall terminate upon the closing of any investigation in which an NSL containing a nondisclosure provision was issued except where the FBI makes a determination that one of the existing statutory standards for nondisclosure is satisfied. The FBI also will review all NSL nondisclosure determinations on the three-year anniversary of the initiation of the full investigation and terminate nondisclosure at that time, unless the FBI determines that one of the statutory standards for nondisclosure is satisfied. When, after the effective date of these procedures, an investigation closes and/or reaches the three-year anniversary of the initiation of the full investigation, the agent assigned to the investigation will receive notification, automatically generated by FBI's case management system, indicating that a review is required of the continued need for nondisclosure for all NSLs issued in the case that included a nondisclosure requirement. Thus, for cases that close after the three-year anniversary of the full investigation, the NSLs that continue to have nondisclosure requirements will be reviewed on two separate occasions; cases that close before the three-year anniversary of the full investigation will be reviewed on one occasion. Moreover, NSL nondisclosure requirements will be reviewed only if they are associated with investigations that close and/or reach their three-year anniversary date on or after the effective date of these procedures.

### B. Review Requirements

The assessment of the need for continued nondisclosure of an NSL is an individualized one; that is, each NSL issued in an investigation will need to be individually reviewed to determine if the facts no longer support nondisclosure

---

[8]    The procedures are available at https://www.fbi.gov/about-us/nsb/termination-procedures-for-national-security-letter-nondisclosure-requirement-1.   The procedures became effective 90 days after they were adopted by the Attorney General, or February 22, 2016.

United States District Court
Northern District of California

under the statutory standard for imposing a nondisclosure requirement when an NSL is issued—i.e., where there is good reason to believe disclosure may endanger the national security of the United States; interfere with a criminal, counterterrorism, or counterintelligence investigation; interfere with diplomatic relations; or endanger the life or physical safety of any person. *See, e.g.*, 18 U.S.C. § 2709(c). This assessment must be based on current facts and circumstances, although agents may rely on the same reasons used to impose a nondisclosure requirement at the time of the NSL's issuance where the current facts continue to support those reasons. If the facts no longer support the need for nondisclosure of an NSL, the nondisclosure requirement must be terminated.

Every determination to continue or terminate the nondisclosure requirement will be subject to the same review and approval process that NSLs containing a nondisclosure requirement are subject to at the time of their issuance. Thus, (i) the case agent will review the NSL, the original written justification for nondisclosure, and any investigative developments to determine whether nondisclosure should continue; (ii) the case agent will document the reason for continuing or terminating the nondisclosure requirement; (iii) the case agent's immediate supervisor will review and approve the case agent's written justification for continuing or terminating nondisclosure; (iv) an attorney—either the Chief Division Counsel or Associate Division Counsel in the relevant field office or an attorney with the National Security Law Branch at FBIHQ—will review the agent's written justification for continuing or terminating nondisclosure; (v) higher-level supervisors—either the Assistant Special Agent in Charge in the field or the Unit Chief or Section Chief at FBIHQ—will review and approve the case agent's written justification for continuing or terminating nondisclosure; and (vi) a Special Agent in Charge or a Deputy Assistant Director at FBIHQ will review and make the final determination regarding the case agent's written justification for continuing or terminating nondisclosure. In addition, those NSLs for which the nondisclosure requirement is being terminated will undergo an additional review at FBIHQ for consistency across field offices and programs. This review process must be completed within 30 days from the date of the review notice given by the FBI's case management system.

### C. Notification of Termination

Upon a decision that nondisclosure of an NSL is no longer necessary, written notice will be given to the recipient of the NSL, or officer, employee, or agent thereof, as well as to any applicable court, as appropriate, that the nondisclosure requirement has been terminated and the information contained in the NSL may be disclosed. Any continuing restrictions on disclosure will be noted in the written notice. If such a termination notice is to be provided to a court, the FBI field office or FBIHQ Division that issued the NSL, in conjunction with FBI's Office of General Counsel, shall coordinate with the Department of Justice to ensure that notice concerning termination of the NSL nondisclosure requirement is provided to the court and any other appropriate parties.

. . .

Second, section 604 of the USAFA, titled "Public Reporting by Persons Subject to Orders," sets forth a structure by which persons subject to nondisclosure orders or requirements accompanying an NSL may make public disclosures regarding the national security process. A

17

1   recipient may publicly report, semi-annually, the number of national security letters received in

2   bands of 100 starting with 0-99, in bands of 250 starting with 0-249, in bands of 500 starting with

3   0-499, or in bands of 1000, starting with 0-999. *See* USAFA § 604(a), Pub. L. No. 114-23, 129

4   Stat. 268 (2015); 50 U.S.C. § 1874(a) (2016).

5

6                                      **DISCUSSION**

7   **I.**     **Level of Scrutiny**

8         The parties dispute what level of scrutiny the Court should apply when analyzing the NSL

9   statutes.[9] The Court notes that the parties largely repeat the same arguments that they advanced to

10   this Court in prior briefing on this issue. Petitioners again contend that the nondisclosure orders

11   amount to a classic prior restraint on speech because they prohibit recipients of an NSL from

12   speaking not just about the NSL's contents and target, but even about the existence or receipt of

13   the NSL. *See, e.g., Alexander v. United States*, 509 U.S. 544, 550 (1993) ("The term 'prior

14   restraint' is used 'to describe administrative and judicial orders forbidding certain communications

15   when issued in advance of the time that such communications are to occur.'" (quoting M. Nimmer,

16   *Nimmer on Freedom of Speech* § 4.03, p. 4-14 (1984))). Petitioners argue that, as a "classic" prior

17   restraint, the statute can only be saved if disclosure of the information from NSLs will "surely

18   result in direct, immediate, and irreparable damage to our Nation or its people." *New York Times*

19   *Co. v. United States (Pentagon Papers)*, 403 U.S. 713, 730 (1971) (Stewart, J., joined by White, J.

20

21   ――――――――――――――――――

22      [9] The parties also dispute whether the Court should engage in a facial analysis of the amended statutes, or limit its review to an as-applied challenge. At the hearing on this matter, the

23   Court asked the parties to articulate the practical difference between these two approaches in light of the Ninth Circuit's instruction to this Court to address petitioners' "challenges to the revised

24   statutes." The principal difference the parties identified was whether the Court would review the Attorney General's recently promulgated "Termination Procedures for National Security Letter

25   Nondisclosure Requirement," because it was unclear (until the hearing) whether those procedures applied to petitioners' NSLs, since those NSLs were issued in 2011 and 2013. The government

26   stated that because the investigations associated with petitioners' NSLs are still ongoing, the procedures would apply upon the termination of the investigations. Based upon that

27   representation, the Court will review the Termination Procedures as applied to petitioners. At the hearing, petitioners asserted that there may be NSLs with current nondisclosure requirements that

28   were issued under the prior NSL statutes and that may not be subject to the Termination Procedures. The Court declines to speculate about the existence of any such NSLs, and limits its consideration to the NSLs issued in these cases.

                              18

United States District Court
Northern District of California

1   concurring).

2       Petitioners also contend that the NSL nondisclosure orders are a content-based restriction
3   on speech because they target a specific category of speech – speech regarding the NSL. As a
4   content-based restriction, the nondisclosure provision is "presumptively invalid," *R.A.V. v. St.*
5   *Paul*, 505 U.S. 377, 382 (1992), and can only be sustained if it is "narrowly tailored to promote a
6   compelling Government interest.... If a less restrictive alternative would serve the Government's
7   purpose, the legislature must use that alternative." *United States v. Playboy Entm't Group*, 529
8   U.S. 803, 813 (2000) (citation omitted).

9       The government contends that the amended nondisclosure provisions are akin to grand jury
10  secrecy requirements and therefore do not warrant the most rigorous First Amendment scrutiny.
11  The government also contends that the *Freedman* procedural safeguards do not apply to the
12  amended NSL statutes because "the USAFA ... has transformed the procedural and substantive
13  protections for NSL recipients from governmental promises of voluntary, nationwide compliance,
14  to statutory protections." Dkt. No. 92 in 3:11-cv-2173 SI at 19 n.15 (internal citation and
15  quotation marks omitted).[10] The government argues that the NSL statutory system is similar to the
16  statute challenged in *Landmark Comm. v. Virginia*, 435 U.S. 829 (1978), which prohibited the
17  disclosure of information about the proceedings of a judicial investigative body and imposed
18  criminal penalties for violation. *See Landmark Comm.*, 435 U.S. at 830. The government asserts
19  that, as in *Landmark*, the NSL statutes do not constitute a prior restraint or attempt to censor the
20  news media or public debate.

21      The Court finds no reason to deviate from its prior analysis regarding the standard of
22  review. As the Court held in 2013, the Court finds that given the text and function of the NSL

23

24       [10] Petitioners A and B are represented by the same counsel, and filed virtually identical
     briefs in the briefing on remand. The main difference in the briefing is that the petitioner's motion
25   in 3:11-cv-2173 SI additionally challenged the "compelled production" provision of section
     2709(b) as unconstitutional. (In the Court's 2013 decision, the Court denied the government's
26   motion to enforce the 2011 NSL, and thus on remand, petitioner A challenged both the
     nondisclosure provisions as well as the statutory authority to request information pursuant to an
27   NSL.)                                   the FBI withdrew the information demand accompanying
     the 2011 NSL, thus mooting those arguments. In the Court's August 12, 2013 order in 3:13-cv-
28   1165 SI, the Court granted the government's motion to enforce the NSLs at issue, and after this
     Court and the Ninth Circuit denied a stay of that order, petitioner B complied with the NSLs.

United States District Court
Northern District of California

statute, petitioners' proposed standards are too exacting. Rather, this Court agrees with the Second Circuit's analysis in *John Doe, Inc. v. Mukasey*:

> Although the nondisclosure requirement is in some sense a prior restraint, . . . it is not a typical example of such a restriction for it is not a restraint imposed on those who customarily wish to exercise rights of free expression, such as speakers in public fora, distributors of literature, or exhibitors of movies. And although the nondisclosure requirement is triggered by the content of a category of information, that category, consisting of the fact of the receipt of an NSL and some related details, is far more limited than the broad categories of information that have been at issue with respect to typical content-based restrictions.

*John Doe, Inc.*, 549 F.3d at 876 (internal citations omitted). The Court also agrees with the Second Circuit's statement that "[t]he national security context in which NSLs are authorized imposes on courts a significant obligation to defer to judgments of Executive Branch officials." *Id.* at 871; *see also Department of Navy v. Egan*, 484 U.S. 518, 530 (1988) ("[C]ourts traditionally have been reluctant to intrude upon the authority of the Executive in . . . national security affairs.")

However, the nondisclosure provision clearly restrains speech of a particular content — significantly, speech about government conduct. *John Doe, Inc.*, 549 F.3d at 876, 878. Under section 2709(c), the FBI has been given the power to determine, on a case-by-case basis, whether to allow NSL recipients to speak about the NSLs. As a result, the recipients are prevented from speaking about their receipt of NSLs and from disclosing, as part of the public debate on the appropriate use of NSLs or other intelligence devices, their own experiences. *See* Dkt. No. 91-2 in 3:11-cv-2173 SI (declaration of ⬚⬚⬚⬚⬚⬚); Dkt. No. 73 in 3:13-cv-1165 SI (corrected declaration of ⬚⬚⬚⬚⬚⬚). In these circumstances, the Court finds that while section 2709(c) does not need to satisfy the extraordinarily rigorous *Pentagon Papers* test, section 2709(c) must still meet the heightened justifications for sustaining prior-restraints announced in *Freedman v. Maryland* and must be narrowly tailored to serve a compelling governmental interest. *See John Doe, Inc.*, 549 F.3d at 878 (noting government conceded strict scrutiny applied in that case).

The Court is not persuaded by the government's attempt to avoid application of the *Freedman* procedural safeguards by analogizing to cases which have upheld restrictions on disclosures of information by individuals involved in civil litigation, grand jury proceedings and judicial misconduct investigations. The concerns that justified restrictions on a civil litigant's pre-

1  trial right to disseminate confidential business information obtained in discovery – a restriction
2  that was upheld by the Supreme Court in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) – are
3  manifestly not the same as the concerns raised in this case. Here, the concern is the government's
4  ability to prevent individuals from speaking out about the government's use of NSLs, a subject
5  that has engendered extensive public and academic debate.

6       The government's reliance on cases upholding restrictions on witnesses in grand jury or
7  judicial misconduct proceedings from disclosing information regarding those proceedings is
8  similarly misplaced.  With respect to grand jury proceedings, the Court notes that the basic
9  presumption in federal court is that grand jury witnesses are not bound by secrecy with respect to
10  the content of their testimony. *See, e.g., In re Grand Jury*, 490 F.3d 978, 985 (D.C. Cir. 2007)
11  ("The witnesses themselves are not under an obligation of secrecy."). While courts have upheld
12  state law restrictions on grand jury witnesses' disclosure of information learned only through
13  participation in grand jury proceedings, those restrictions were either limited in duration or
14  allowed for broad judicial review. *See, e.g., Hoffmann-Pugh v. Keenan*, 338 F.3d 1136, 1140
15  (10th Cir. 2003) (agreeing state court grand jury witness could be precluded from disclosing
16  information learned through giving testimony, but noting state law provides a mechanism for
17  judicial determination of whether secrecy still required); *cf. Butterworth v. Smith*, 494 U.S. 624,
18  632 (1990) (interests in grand jury secrecy do not "warrant a permanent ban on the disclosure by a
19  witness of his own testimony once a grand jury has been discharged.").

20       Importantly, as the Second Circuit recognized, the interests of secrecy inherent in grand
21  jury proceedings arise from the nature of the proceedings themselves, including "enhancing the
22  willingness of witnesses to come forward, promoting truthful testimony, lessening the risk of
23  flight or attempts to influence grand jurors by those about to be indicted, and avoiding public
24  ridicule of those whom the grand jury declines to indict." *John Doe, Inc.*, 549 F.3d at 876. In the
25  context of NSLs, however, the nondisclosure requirements are imposed at the demand of the
26  Executive Branch "under circumstances where the secrecy might or might not be warranted." *Id.*
27  at 877.  Similarly, the secrecy concerns which inhere in the nature of judicial misconduct
28  proceedings, as well as the temporal limitations on a witness's disclosure regarding those

1  proceedings, distinguish those proceedings from section 2709(c). *Id.*

2    The Court is also not persuaded by the government's contention that *Freedman* should not

3  apply to the revised NSL statutes because the USAFA "has transformed the procedural and

4  substantive protections for NSL recipients from 'governmental promises' of 'voluntary, nationwide

5  compliance,' [quoting *In re NSL*, 930 F. Supp. 2d at 1073-74], to statutory protections." Dkt. No.

6  92 in 3:11-cv-2173 SI at 19 n.15 (internal citation and quotation marks omitted). *Freedman* holds

7  that where expression is conditioned on governmental permission, the First Amendment generally

8  requires procedural safeguards to protect against censorship. While the USAFA changed the

9  procedures for judicial review and the circumstances under which nondisclosure requirements

10  could be lifted or amended, expression nevertheless remains conditioned on governmental

11  permission.[11]  Under the amended statutes, the government is still permitted to impose a

12  nondisclosure requirement on an NSL recipient to prevent the recipient from disclosing the fact

13  that it has received an NSL, as well as from disclosing anything about the information sought by

14  the NSL.

15    The government also asserts that the amended NSL statutory scheme is akin to the criminal

16  statute challenged in *Landmark Communications v. Virginia*, 435 U.S. 829 (1978). *Landmark

17  Communications* is inapposite. In that case, the question was "whether the First Amendment

18  permits the criminal punishment of third persons who are strangers to the inquiry, including the

19  news media, for divulging or publishing truthful information regarding confidential proceedings of

20  the Judicial Inquiry and Review Commission." *Id.* at 837. Here, rather than imposing criminal

21  sanctions based on disclosure of information, the statute permits the government to impose a

22  nondisclosure requirement prohibiting speech.

23

24

25

─────────────────────────

26  [11] The Court does, however, recognize the differences between licensing schemes such as
those at issue in *Freedman*, which always act as a restraint because such systems are applied to all
27  prospective speakers at the time the speaker wishes to speak, and the NSL nondisclosure
requirements, which apply at the time the government requests information as part of an
28  investigation and at a time when there is no certainty that a NSL recipient wishes to engage in
speech.

United States District Court
Northern District of California

## II.   Procedural Safeguards

Having concluded that the procedural safeguards mandated by *Freedman* should apply to the amended NSL statutes, the question becomes whether those standards are satisfied. *Freedman* requires that "'(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.'" *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 321 (2002) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990) (O'Connor, J., joined by Stevens, and Kennedy, JJ.)).

### A.   Time Prior to Judicial Review

Under *Freedman*'s first prong, any restraint prior to judicial review can be imposed only for "a specified brief period." *Freedman*, 380 U.S. at 59. Previously, the NSL provisions did not provide any limit to the period of time the nondisclosure order can be in place prior to judicial review. The Second Circuit held that this *Freedman* factor would be satisfied if the government were to notify NSL recipients that if they objected to the nondisclosure order within ten days, the government would seek judicial review of the nondisclosure restriction within thirty days. *John Doe, Inc.*, 549 F.3d at 883.

The amended statute largely incorporates the Second Circuit's suggestions on this point. Section 2709(d)(2) requires that an NSL "include notice of the availability of judicial review," and section 3511(b)(2) provides that if a recipient notifies the government that it wishes to have a court review a nondisclosure requirement, within 30 days "the Government shall apply for an order prohibiting the disclosure of the existence or contents of the relevant request or order." 18 U.S.C. § 2709(d)(2) (2016); 18 U.S.C. § 3511(b)(2) (2016).

Petitioners contend that the amended statute violates the first prong of the *Freedman* test because the statute authorizes gags of indefinite duration unless the recipient takes action by initiating judicial review or by notifying the government of its desire for judicial review. Petitioners argue that the amended statute violates *Freedman*'s admonition that a potential speaker

23

1  must be "assured" by the statute that a censor "will, within a specified brief period, either issue a

2  license or go to a court to restrain" the speech at issue. *Freedman*, 380 U.S. at 58-59. As

3  discussed *supra*, because the NSL nondisclosure requirements are not a typical prior restraint, the

4  Court concludes the Constitution does not require automatic judicial review in every instance,

5  provided that NSL recipients are notified that judicial review is available and the *Freedman*

6  procedural safeguards are otherwise met. *See John Doe, Inc.*, 549 F.3d at 879-80 (discussing

7  reciprocal notice procedure and how use of that procedure obviates need for automatic judicial

8  review of every NSL).

9       The Court further finds that although the amended statute does not include the initial ten

10  day period discussed by the Second Circuit, the amended statute satisfies *Freedman*'s first

11  requirement that any restraint prior to judicial review can be imposed only for "a specified brief

12  period." Under the amended statute, a recipient of an NSL is notified of the availability of judicial

13  review at the same time the recipient receives the NSL. If a recipient wishes to seek prompt

14  review of a nondisclosure order, the recipient can either file a petition or promptly notify the

15  government of its objection, thereby triggering the thirty day period for the government to initiate

16  judicial review. As such, the Court finds that the amended statute complies with *Freedman*'s first

17  requirement.

18

19       **B.    "Expeditious" Judicial Review**

20       *Freedman* next requires "a prompt final judicial decision" regarding the nondisclosure

21  requirement. *Freedman*, 380 U.S. at 59. Amended section 3511(B)(1)(C) states that a court

22  reviewing nondisclosure requirements "should rule expeditiously." 18 U.S.C. § 3511(b)(1)(C)

23  (2016).

24       Petitioners contend that the amended statute does not meet the second *Freedman*

25  requirement because there is no specified time period in which a final determination must be

26  made. Petitioners rely on the Second Circuit's holding in *John Doe, Inc.*, that if the government

27  used the Second Circuit's suggested reciprocal notice procedure as a means of initiating judicial

28  review, "time limits on the nondisclosure requirement pending judicial review, as reflected in

24

*Freedman*, would have to be applied to make the review procedure constitutional." *John Doe, Inc.*, 549 F.3d at 883. The Second Circuit held, "[w]e would deem it to be within our judicial authority to conform subsection 2709(c) to First Amendment requirements, by limiting the duration of the nondisclosure requirement . . . and a further period of 60 days in which a court must adjudicate the merits, unless special circumstances warrant additional time." *Id.*

Petitioners' arguments about prescribing time limits for the completion of judicial review are not without force. However, although the Second Circuit held that a 60 day time limit for judicial review would meet constitutional standards, the *John Doe, Inc.* court was reviewing the prior version of section 3511 which did not contain the directive that "courts should rule expeditiously." As the government notes, *Freedman* and other Supreme Court cases applying or discussing *Freedman* have held the Constitution requires "prompt" or "expeditious" judicial review. *Freedman*, 380 U.S. at 59; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990) (stating *Freedman*'s second prong as requiring "expeditious judicial review of [prior restraint] decision"); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560 (1975) (stating under *Freedman* "a prompt final judicial determination must be assured."). In *Freedman*, the Supreme Court held that the Maryland censorship scheme did not satisfy this requirement because the statute only stated that a person could seek judicial review of an adverse decision, without "any assurance of prompt judicial review." 380 U.S. at 54, 59. Here, in contrast, the amended statute directs that courts "should rule expeditiously." 18 U.S.C. § 3511(b)(1)(C) (2016). The Court concludes that the amended statute satisfies the second *Freedman* procedural prong.

## C.   Government Must Initiate Judicial Review and Bear Burden of Proof

The third *Freedman* safeguard requires the government to bear the burden of seeking judicial review and to bear the burden of proof once in court. *Freedman*, 380 U.S. at 59-60. The Second Circuit found that the absence of a reciprocal notice procedure in the prior version of the NSL statutes rendered them unconstitutional, but suggested that if the government were to inform recipients that they could object to the nondisclosure order, and that if they objected, the government would seek judicial review, then the constitutional problem could be avoided. *John*

25

1    *Doe, Inc.*, 549 F.3d at 879-80. The amended statutes now incorporate this reciprocal notice

2    procedure. *See* 18 U.S.C. §§ 2709(c)(1)(A); 2709(d)(2) (2016) (requiring notice of the availability

3    of judicial review); 18 U.S.C. § 3511(b)(1)(A)-(C) (2016) (initiating judicial review through

4    reciprocal notice and imposing 30-day requirement on government).

5         Petitioners argue that the amended statute places an impermissible burden on invoking

6    judicial review because recipients need to notify the FBI of an objection in order to trigger judicial

7    review. Petitioners' principal complaint is that the amended statute does not require automatic

8    judicial review of every NSL, a contention that the Court has already addressed. *See also John*

9    *Doe, Inc.*, 549 F.3d at 879-80. The Court also finds that notifying the government of an objection

10   is not a substantial burden, and that the relevant burden is "the burden of instituting judicial

11   proceedings," which is placed on the government. *See Freedman*, 380 U.S. at 59; *see also*

12   *Southeastern Promotions, Ltd.*, 420 U.S. at 560; *see also id.* at 561 (holding municipal board's

13   rejection of application to use public theater for showing of rock musical "Hair" did not meet

14   *Freedman*'s procedural requirements because, *inter alia*, "[t]hroughout [the process], it was

15   petitioner, not the board, that bore the burden of obtaining judicial review."). Here, if a recipient

16   notifies the government of an objection, the burden of seeking judicial review is upon the

17   government. Petitioners also assert that the amended statute is deficient because the government

18   can choose to ignore its obligation to initiate judicial review. However, petitioners' assertion is

19   speculative, and the record before the Court shows that the government promptly sought judicial

20   review with respect to the NSLs at issue.[12]

21

22   **III.    Judicial Review**

23        The prior version of section 3511(b) provided that a court could modify or set aside a

24   nondisclosure requirement only if the court found there was "no reason to believe that disclosure

25   may endanger the national security of the United States, interfere with a criminal,

26   counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or

27

28      [12] The question of which party bears the burden of proof is related to the issue of judicial
review, and thus the Court discusses the two issues together *infra*.

United States District Court
Northern District of California

1    endanger the life or physical safety of any person." 18 U.S.C. § 3511(b)(2-(3) (2014).  If the FBI
2    certified that such a harm "may" occur, the district court was required to accept that certification
3    as "conclusive."  *Id.*

4        This Court found that the prior version of section 3511(b) impermissibly restricted the
5    scope of judicial review.  The Court held that "[t]he statute's intent – to circumscribe a court's
6    ability to modify or set aside nondisclosure NSLs unless the essentially insurmountable 'no reason
7    to believe' that a harm 'may' result is satisfied – is incompatible with the court's duty to searchingly
8    test restrictions on speech."  *In re National Sec. Letter*, 930 F. Supp. 2d at 1077-78.  The Court
9    agreed with the government that "in light of the national security context in which NSLs are
10   issued, a highly deferential standard of review is not only appropriate but necessary."  *Id.* at 1078.
11   However, the Court found that deference to the government's national security determinations
12   "must be based on a reasoned explanation from an official that directly supports the assertion of
13   national security interests."  *Id.*  The Court also agreed with the Second Circuit that the statute's
14   direction that courts treat the government's certification as "conclusive" was also unconstitutional.

15       The amended statute now states, "A district court of the United States shall issue a
16   nondisclosure order or extension thereof under this subsection if the court determines that there is
17   reason to believe that disclosure of the information subject to the nondisclosure requirement
18   during the applicable time period may result in-- (A) a danger to the national security of the
19   United States; (B) interference with a criminal, counterterrorism, or counterintelligence
20   investigation; (C) interference with diplomatic relations; or (D) danger to the life or physical
21   safety of any person."  18 U.S.C. § 3511(b)(3) (2016).  Section 3511(b)(2) now requires the
22   government's application for nondisclosure order to include a certification from a specified
23   government official that contains "a statement of specific facts indicating that the absence of a
24   prohibition on disclosure may result in" an enumerated harm.  In addition, through the USAFA
25   Congress eliminated the "conclusive" nature of certain certifications by certain senior officials.

26       The Court concludes that as amended, section 3511 complies with constitutional
27   requirements and cures the deficiencies previously identified by this Court.  Section 3511 no
28   longer contains the "essentially insurmountable" standard providing that a court could modify or

United States District Court
Northern District of California

United States District Court
Northern District of California

1  set aside a nondisclosure requirement only if the court found there was "no reason to believe" that

2  disclosure may result in an enumerated harm.  The government argues, and the Court agrees, that

3  in the USAFA, Congress implicitly ratified the Second Circuit's interpretation of section 3511 as

4  "plac[ing] on the Government the burden to persuade a district court that there is a good reason to

5  believe that disclosure may risk one of the enumerated harms, and that a district court, in order to

6  maintain a nondisclosure order, must find that such a good reason exists."  *John Doe, Inc.*, 549

7  F.3d at 875-76.[13]  This conclusion is supported by the legislative history of the USAFA, which

8  states that section 502 of the USAFA (which amended section 3511 as well as section 2709),

9  "corrects the constitutional defects in the issuance of NSL nondisclosure orders found by the

10  Second Circuit Court of Appeals in *Doe v. Mukasey*, 549 F.3d 861 (2d Cir. 2008), and adopts the

11  concepts suggested by that court for a constitutionally sound process."  H.R. Rep. No. 114-109, at

12  24 (2015); *see also Midatlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.*, 474 U.S. 494, 501 (1986)

13  (citing the "normal rule of statutory construction" that "if Congress intends for legislation to

14  change the interpretation of a judicially created concept, it makes that intent specific."); *Lorillard*

15  *v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or

16  judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute

17  without change . . . ."); *United States v. Lincoln*, 277 F.3d 1112, 1114 (9th Cir. 2002) (where Ninth

18  Circuit had previously interpreted statutory definition of "victim" to include the United States and

19  Congress amended that definition without excluding the United States, the court "inferred that

20  Congress adopted the judiciary's interpretation.").[14]

21

22  ———————————
[13]  In so interpreting the pre-USAFA version of section 3511, the Second Circuit accepted

23  the government's concessions that (1) "'reason' in the quoted phrase means 'good reason'"; and (2) "the statutory requirement of a finding that an enumerated harm 'may result' to mean more than a

24  conceivable possibility.  The upholding of nondisclosure does not require the certainty, or even the imminence of, an enumerated harm, but some reasonable likelihood must be shown."  *Id.* at 875.

25  [14]  The Court notes that the "good reason" standard is also discussed in the Attorney

26  General's recently promulgated "Termination Procedures for National Security Letter Nondisclosure Requirement."  Those procedures state, *inter alia*, "The FBI may impose a

27  nondisclosure requirement on the recipient of an NSL only after certification by the head of an authorized investigative agency, or an appropriate designee, that one of the statutory standards for

28  nondisclosure is satisfied; that is, *where there is good reason to believe* disclosure may endanger the national security of the United States; interfere with a criminal, counterterrorism, or counterintelligence investigation; interfere with diplomatic relations; or endanger the life or

28

1    Petitioners contend that even if the amended statute could be interpreted as requiring the
2    government to demonstrate that there is a "good reason" to believe that disclosure of the
3    information may result in an enumerated harm, the standard of review is "excessively deferential"
4    because the "may result" standard in section 3511(b)(3) is incompatible with the First
5    Amendment's requirement that restrictions on speech be "necessary." However, as the Second
6    Circuit held, "[t]he upholding of nondisclosure does not require the certainty, or even the
7    imminence of, an enumerated harm, but some reasonable likelihood must be shown." *John Doe,*
8    *Inc.,* 549 F.3d at 875. This reasonable likelihood standard is incorporated by the USAFA, *see*
9    H.R. Rep. No. 114-109, at 24 (2015), and the Court concludes that this standard is sufficient.
10   Further, a court will be able to engage in meaningful review of a nondisclosure requirement
11   because under the amended statute, the government is required to provide "a statement of specific
12   facts indicating that the absence of a prohibition on disclosure may result in" an enumerated harm,
13   and courts are no longer required to treat the government's certification as "conclusive." 18 U.S.C.
14   § 3511(b)(2) (2016).
15
16   **V.     Narrowly Tailored to Serve a Compelling Governmental Interest**
17         As content-based restrictions on speech, the NSL nondisclosure provisions must be
18   narrowly tailored to serve a compelling governmental interest. It is undisputed that "no
19   governmental interest is more compelling than the security of the Nation." *Haig v. Agee,* 453 U.S.
20   280, 307 (1981). The question is whether the NSL nondisclosure provisions are sufficiently
21   narrowly tailored to serve that compelling interest without unduly burdening speech.
22         The Court previously found that the NSL nondisclosure provisions were not narrowly
23   tailored on their face, since they applied, without distinction, to both the content of the NSLs and
24   to the very fact of having received one. The Court found it problematic that the statute did not
25   distinguish – or allow the FBI to distinguish -- between a prohibition on disclosing mere receipt of
26   an NSL and disclosing the underlying contents. The Court was also concerned about the fact that
27
28   physical safety of any person."   https://www.fbi.gov/about-us/nsb/termination-procedures-for-
     national-security-letter-nondisclosure-requirement-1.

United States District Court
Northern District of California

1  nothing in the prior statute required or even allowed the government to rescind the non-disclosure

2  order once the impetus for it had passed.  Instead, the review provisions required the recipient to

3  file a petition asking the Court to modify or set aside the nondisclosure order.  *See* 18 U.S.C.

4  § 3511(b) (2014). The Court also found problematic the fact that if a recipient sought review, and

5  the court declined to modify or set aside the nondisclosure order, a recipient was precluded from

6  filing another petition to modify or set aside for a year, even if the need for nondisclosure would

7  cease within that year.  18 U.S.C. § 3511(b)(3) (2014).

8      The Court concludes that the amendments to section 3511 addressed the Court's concerns.

9  18 U.S.C. § 3511(b)(1)(C) now provides that upon review, a district court may "issue a

10  nondisclosure order that includes conditions appropriate to the circumstances."  18 U.S.C.

11  § 3511(b)(1)(C) (2016). At the hearing, the government stated that "conditions appropriate to the

12  circumstances" could include a temporal limitation on nondisclosure, as well as substantive

13  conditions regarding what information, such as the identity of the recipient or the contents of the

14  subpoena, is subject to the nondisclosure order.  The amended statutes also now authorize the

15  Director of the FBI to permit additional disclosures concerning NSLs.  *See* 18 U.S.C. §§

16  2709(c)(2)(A)(iii) (2016) (recipient of NSL "may disclose information otherwise subject to any

17  applicable nondisclosure requirement to . . . other persons as permitted by the Director of the

18  Federal Bureau of Investigation or the designee of the Director.")[15]; 18 U.S.C. § 2709(c)(2)(D)

19  ("At the request of the Director of the Federal Bureau of Investigation or the designee of the

20  Director, any person making or intending to make a disclosure under clause (i) or (iii) of

21  subparagraph (A) shall identify to the Director or such designee the person to whom such

22  disclosure will be made or to whom such disclosure was made prior to the request.").  In addition,

23  Congress eliminated the provision that precluded certain NSL recipients from challenging a

24  nondisclosure requirement more than once per year.  USAFA § 502(f)(1), Pub. L. No. 114-23, 129

25  Stat. 268 (2015).

26

27  _____
   [15]  The prior version of section 2709(c) permitted NSL recipients to disclose that they had

28  received an information request to (1) parties necessary to comply with the request and (2) an
   attorney to obtain legal advice or legal assistance regarding the request.  18 U.S.C. § 2709(c)
   (2014).

United States District Court
Northern District of California

1    In addition, on November 24, 2015, pursuant to section 502(f) of the USAFA, the Attorney

2  General adopted "Termination Procedures for National Security Letter Nondisclosure

3  Requirement."   https://www.fbi.gov/about-us/nsb/termination-procedures-for-national-security-

4  letter-nondisclosure-requirement-1.  The procedures require the FBI to re-review the need for the

5  nondisclosure requirement of an NSL three years after the initiation of a full investigation and at

6  the closure of the investigation, and to terminate the nondisclosure requirement when the facts no

7  longer support nondisclosure. These procedures apply to investigations that close or reach their

8  three year anniversary on or after the effective date of the procedures.  At the hearing in this case,

9  the government stated that the investigations related to the NSLs issued to petitioners all remain

10  open, and thus the procedures would apply when (and if) the investigations are closed.[16]  The

11  procedures state, *inter alia,*

> The assessment of the need for continued nondisclosure of an NSL is an individualized one; that is, each NSL issued in an investigation will need to be individually reviewed to determine if the facts no longer support nondisclosure under the statutory standard for imposing a nondisclosure requirement when an NSL is issued—i.e., where there is good reason to believe disclosure may endanger the national security of the United States; interfere with a criminal, counterterrorism, or counterintelligence investigation; interfere with diplomatic relations; or endanger the life or physical safety of any person. *See, e.g.,* 18 U.S.C. § 2709(c).  This assessment must be based on current facts and circumstances, although agents may rely on the same reasons used to impose a nondisclosure requirement at the time of the NSL's issuance where the current facts continue to support those reasons.  If the facts no longer support the need for nondisclosure of an NSL, the nondisclosure requirement must be terminated.

19  *Id.*

20    Petitioners do not raise any specific challenge to these procedures (and they were adopted

21  during the course of briefing the instant motions), other than to assert that there may be some

22  NSLs that were issued prior to 2015 that will not be subject to the new procedures based on when

23  the underlying investigations began and ended.  However, the government stated that the

24  investigations related to the NSLs in these cases are all open, and thus the procedures will apply to

25  these NSLs if and when those investigations close.  Further, the Court finds that these procedures

26

---

27    [16]  The FBI has also re-reviewed the need for the nondisclosure requirements for these

28  particular NSLs in connection with the current briefing, and has submitted the classified declarations in support of the government's position that the nondisclosure requirements remain necessary.

United States District Court
Northern District of California

United States District Court.
Northern District of California

1    provide a further mechanism for review of nondisclosure requirements.

2         Finally, the Court finds that section 604 of the USAFA, which permits recipients of NSLs

3    to make semi-annual public disclosures of aggregated data in "bands" about the number of NSLs

4    they have received, supports a conclusion that the NSL statutes are narrowly tailored because this

5    section permits recipients to engage in some speech about NSLs, even when the nondisclosure

6    requirements are still in place.

7

8    **V.    18 USC § 3551(b) Review of Pending Nondisclosure Requests**

9         In addition to the parties' combined challenge to the constitutionality of the statutes and

10   regulations now governing NSL requests, this Court is presented with consideration of the

11   appropriateness of continued nondisclosure of the four specific NSL applications which gave rise

12   to these cases. The Court has reviewed, *in camera* and subject to complex security restrictions,

13   the certifications drafted pursuant to amended 18 U.S.C. § 3511(b)(2), supporting the

14   government's request for continued nondisclosure of the existence of the NSLs. The regulations

15   and the case law then require that this Court determine whether there is a reasonable likelihood

16   that disclosure of the information subject to the nondisclosure requirement would result in a

17   danger to the national security of the United States, interference with a criminal, counterterrorism

18   or counterintelligence investigation, interference with diplomatic relations or danger to a person's

19   life or physical safety.

20        As to three of the certifications (in cases c:13-cv-1165 SI and 3:11-cv-2173 SI), the Court

21   finds that the declarant has made such a showing. As to the fourth (in case 3:13-mc-80089 SI), the

22   Court finds that the declarant has not. Nothing in the certification suggests that there is a

23   reasonable likelihood that disclosure of the information subject to the nondisclosure requirement

24   would result in a danger to the national security of the United States, interference with a criminal,

25   counterterrorism or counterintelligence investigation, interference with diplomatic relations or

26   danger to a person's life or physical safety.

27

28

32

## CONCLUSION

For the foregoing reasons and for good cause shown, in cases c:13-cv-1165 SI and 3:11-cv-2173 SI the Court hereby DENIES petitioners' motions and GRANTS the government's motions. In case 3:13-mc-80089 SI, the Court hereby GRANTS in part and DENIES in part petitioner's motion and GRANTS in part and DENIES in part the government's motion. The Government is therefore enjoined from enforcing the nondisclosure provision in case 3:13-mc-80089 SI. However, given the significant constitutional and national security issues at stake, enforcement of the Court's order will be stayed pending appeal, or if no appeal is filed, for 90 days.

The Court sets a status conference for April 15, 2016 at 3:00 p.m. to address what matters, if any, remain to be decided in these cases prior to the entry of judgment, as well as whether any portions of this order can be unsealed.

**IT IS SO ORDERED.**

Dated: March 29, 2016

SUSAN ILLSTON
United States District Judge

33



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

SEALED,

        Plaintiff,

   v.

SEALED,

        Defendant.

Case No.  11-cv-02173-SI
*SEALED*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 3/29/2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Aaron David Mackey
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109

Cindy Ann Cohn
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109

David A Greene
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109

Jennifer Ann Lynch
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109

Kurt Bradford Opsahl
Electronic Frontier Foundation

815 Eddy Street
San Francisco, CA 94109

Nathan Daniel Cardozo
Electronic Frontier Foundation
815 Eddy Street
San Francisco, CA 94109

Steven Yale Bressler
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

Dated: 3/29/2016

Susan Y. Soong
Clerk, United States District Court
of Kasamoto

By:_____
Tracy Kasamoto, Deputy Clerk to the
Honorable SUSAN ILLSTON

United States District Court
Northern District of California

2

# Exhibit 5

# Exhibit 6

# Exhibit 7

Case 4:17-cv-01959-SBA   Document 53   Filed 03/16/18   Page 60 of 66
Case 1:12-mc-00007-AJT-IDD   Document 17-3   Filed 06/28/12   Page 1 of 2 PageID# 140

Case 1:12-mc-00007-AJT-IDD   Document 15 *SEALED*   Filed 04/24/12   Page 1 of 2 PageID# 92

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE NATIONAL SECURITY LETTER )
                                )
                                )      Case Number 1:12-mc-0007 (AJT/IDD)
                                )
                                )      **UNDER SEAL**
                                )
                                )

**ORDER**

Upon consideration of the Attorney General's Petition for Judicial Review and Enforcement of a National Security Letter Pursuant to 18 U.S.C. § 3511 [Doc. No. 1], and the government's memorandum and exhibits in support thereof, the Court finds: (1) the National Security Letter ("NSL") dated [            ] 2012, and issued to [            ] ("Respondent" or [            ]) was properly issued in accordance with law, including 18 U.S.C. § 2709; and (2) disclosure of the fact of the NSL, including the fact of its receipt by [            ] or disclosure of the contents of the NSL, including the contents of the attachment thereto, may result in a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of a person. Wherefore, it is hereby

ORDERED that Respondent is bound by the nondisclosure provisions of 18 U.S.C. § 2709 and the NSL, including the requirement that Respondent not disclose the fact that it received the NSL or contents of the NSL, including the attachment thereto, to any person (other than those to whom such disclosure is necessary to comply with the request or an attorney to obtain legal advice or legal assistance with respect to the request); and it is further

Case 4:17-cv-01959-SBA    Document 53    Filed 03/16/18    Page 61 of 66
Case 1:12-mc-00007-AJT-IDD   Document 17-3   Filed 06/28/12   Page 2 of 2 PageID# 141

Case 1:12-mc-00007-AJT-IDD   Document 15 *SEALED*   Filed 04/24/12   Page 2 of 2 PageID# 93

ORDERED that Respondent shall not disclose to any person (other than those to whom such disclosure is necessary to comply with the request or an attorney to obtain legal advice or legal assistance with respect to the request) that the Federal Bureau of Investigation has sought or obtained access to information or records from Respondent under 18 U.S.C. § 2709; and it is further

ORDERED that any failure to obey this Order may be punished by the Court as contempt thereof.

The Clerk is directed to forward copies of this Order to all counsel of record.

_____/s/_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 24, 2012

2

# Exhibit 8

F I L E D

MAY 28 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

This order is available
for Public Release

IN RE NATIONAL SECURITY LETTERS,

No. C 13-80063 SI
Amended
ORDER DENYING PETITION TO SET
ASIDE AND GRANTING CROSS-
PETITION TO ENFORCE

/

Currently before the Court is a Petition to modify or set aside nineteen (19) National Security Letters (NSLs) that were issued to Petitioner by the Federal Bureau of Investigation under 18 U.S.C. §§ 3511(a) and (b). Petition, filed 3/29/13. The Government, in addition to opposing the Petition, filed a Cross-Petition to enforce the 19 NSLs under 18 U.S.C. § 3511(c). Cross-Petition, filed 4/26/13. Also before the Court is a second Petition filed by Petitioner on April 26, 2013, which seeks to modify or set aside an NSL served on Petitioner on April 22, 2013 in New York ("New York NSL"). Second Petition, filed 4/26/13. On the same date the Government served the New York NSL, the Government filed a Petition in the Southern District of New York seeking to enforce the New York NSL. See Notice, filed 4/22/13.

The matters pending before this Court were heard on May 10, 2013. Having considered the papers submitted, including the classified declarations of Stephanie Douglas and Robert Anderson submitted *ex parte* for the Court's review, and the arguments made by counsel, the Court rules as follows.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1 **1.    First 19 NSLs**

2       The Court rejects Petitioner's argument that the 19 NSLs at issue can be set aside, and the

3 Court can enjoin the FBI from issuing future NSLs to Petitioner, solely on the basis that this Court

4 found unconstitutional portions of the NSL statutes governing nondisclosure orders issued in

5 conjunction with NSLs. *See In re NSL*, No. 3:11-2173 (March 14, 2013) (finding 18 U.S.C. §

6 2709(c), 18 U.S.C. §§ 3511(b)(2), (b)(3)) facially unconstitutional). The Court's judgment – as to

7 the enforcement of the particular NSL at issue in that case – was stayed pending appeal. Whether

8 the challenged nondisclosure provisions are, in fact, facially unconstitutional will be determined in

9 due course by the Ninth Circuit.

10      As to the issues before the Court on the current Petition to modify or set aside, the Court will

11 review the arguments and evidence on an NSL-by-NSL basis. In particular, the Government has

12 submitted evidence – both unclassified and classified – intended to demonstrate that the 19 NSLs

13 were issued in full compliance with the procedural and substantive requirements imposed by the

14 Second Circuit in *Doe v. Mukasey*, 549 F.3d 861 (2nd Cir. 2008). Those requirements include: (1)

15 notifying NSL recipients that the government will initial judicial review of the nondisclosure order

16 and underlying NSL if the recipient objects to compliance; (2) certifying that the nondisclosure order

17 is necessary to prevent interference with an authorized investigation to protect against international

18 terrorism or clandestine intelligence agencies; (3) upon a challenge in Court, the government submits

19 evidence to show the District Court judge there is a "good reason" to believe that absent

20 nondisclosure, some reasonable likelihood of harm to an authorized investigation to protect against

21 international terrorism or clandestine intelligence agencies will result; and (4) the District Court is

22 not expected to treat the FBI's certification as to the necessity of the nondisclosure as conclusive, but

23 to conduct a searching review of the evidence submitted. *Id.*, at 883-84.

24      Although not privy to the classified information, Petitioner does not dispute that the FBI has

25 complied with the strictures imposed by the Second Circuit. The Government has, therefore,

26 complied with procedural and substantive requirements that the Court and Petitioner in the Court's

27 prior case recognized could result in a constitutional application of the nondisclosure and judicial

28 review provisions of 18 U.S.C. § 2709(c) and 18 U.S.C. §§ 3511(b)(2), (b)(3). *See In re NSL*, No.

United States District Court
For the Northern District of California

1   3:11-2173 (March 14, 2013) at 7, 21-23. In these circumstances – given the as-applied showings,

2   given that the constitutionality of the statute as written is under review at the Ninth Circuit, and given

3   that Petitioner did not raise arguments *specific* to the 19 NSLs at issue why the nondisclosure orders

4   should not be enforced – the Court DENIES the Petition to modify or set aside the 19 NSLs on the

5   arguments.

6          Turning to the Government's Cross-Petition to enforce, the Government argues that in

7   determining whether to enforce administrative subpoenas (like the NSLs at issue), the Court must

8   consider: (1) whether Congress has granted the FBI the authority to investigate; (2) whether

9   procedural requirements have been followed; and (3) whether the evidence sought is relevant and

10  material to the investigation. *See EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1428

11  (9th Cir. 1983).[1] Having reviewed the Government's arguments and evidence submitted, the Court

12  finds that as to 17 of the 19 NSLs, Congress has authorized the FBI to seek the information requested,

13  the procedural requirements set both by the statute and by the Second Circuit's *Doe v. Mukasey*

14  decision have been followed, and the evidence sought is relevant and material to the investigations.

15  In particular, as disclosed in the Government's pleadings, a senior FBI official has certified that the

16  information sought is relevant to an authorized investigation to protect against international terrorism

17  or clandestine intelligence activities; and the investigations, where aimed at a "United States person,"

18  are not conducted solely on the basis of activities protected by the First Amendment. *See* Cross-

19  Petition at 19 (citing Douglas Declaration). The Government's declarant also explains what

20  information is being sought in each NSL and how that information is relevant to a pending national

21  security investigation. *Id.*, at 20. Having reviewed the arguments and evidentiary showing made,

22  the Court finds that the government has met its burden to enforce these NSLs and therefore GRANTS

23  the Government's Cross-Petition to enforce as to requests Nos. 1-10 and 13-19.

24

25

26

27        [1] Petitioner did not file a brief in opposition to the Government's Cross-Petition to enforce.
    During argument, Petitioner did not dispute or address whether NSLs are akin to "administrative
28  subpoenas" or what standard of review the Court need apply in ruling on the Government's Cross-
    Petition.

3

United States District Court
For the Northern District of California

1    As to two of the NSLs, Nos. 11 & 12, the Court has requested, through the Court Security

2  Officer, that the Government provide further information.  The Court will issue a further ruling after

3  receipt of the information to be provided.

4

5  **2.    New York NSL**

6    Finally, addressing the New York NSL, the Court notes that the Government's Petition to

7  enforce was filed in the Southern District of New York *prior* to Petitioner filing its Petition to modify

8  or set aside the same here.  Petitioner argues that the Government's actions were contrary to the

9  judicial review provisions in18 U.S.C. § 3511 because Petitioner had not been given the opportunity

10  to comply or object to the New York NSL before the Government filed its petition to enforce.  The

11  Court finds that whether the Government appropriately sought judicial enforcement of the New York

12  NSL is more squarely raised in the Southern District of New York proceeding and is likely to be

13  resolved by Judge Sullivan.  Therefore, the Court DENIES without prejudice Petitioner's Second

14  Petition seeking to modify or set aside the New York NSL.  If Judge Sullivan finds that the

15  Government's enforcement petition was not appropriately filed in the Southern District of New York

16  and/or does not reach the merits of the enforceability of that NSL, Petitioner or the Government may

17  seek immediate judicial review in this forum on renewed Petitions.[2]

18

19    **IT IS SO ORDERED.**

20

21  Dated: May 20, 2013

22                                                    SUSAN ILLSTON
                                                      United States District Judge
23

24

25

26

27

28    [2]  While this case has been sealed pursuant to 18 U.S.C. § 3511(d), the Court finds that
nondisclosure of this Order is not necessary to prevent a disclosure of a request for records under 18
U.S.C. § 2709(b).  Therefore, this Order shall not be sealed and shall be publicly available.

4